

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00065-CR

_____

DILLON AUSTIN VENSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 2024F00021

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

A Cass County jury convicted Dillon Austin Venson of indecency with a child by contact and assessed a sentence of twenty years' imprisonment with a $10,000.00 fine.[1]  *See* TEX. PENAL CODE ANN. § 21.11.  On appeal, Venson argues that (1) the trial court should have designated the victim's mother as the outcry witness instead of the forensic interviewer, (2) the State improperly commented on his post-arrest silence, and (3) the evidence was insufficient to support the jury's verdict of guilt.

Venson raised his first and second issues in Venson's appellate cause number, 06-25-00066-CR, which addressed Venson's appeal from another conviction for indecency with a child by contact.  For the reasons stated in our opinion in appellate cause number 06-25-00066-CR, dated May 11, 2026, we likewise find that the trial court did not abuse its discretion by (1) designating the forensic interviewer as the outcry witness and (2) overruling Venson's Fifth Amendment[2] complaint related to his invocation of the right to remain silent during his investigation.  We also find that legally sufficient evidence supports the jury's verdict of guilt. As a result, we affirm the trial court's judgment.

I.      **Factual Background**

Rose Lane[3] was a twelve-year-old girl who lived with her mother, Carol Ginny.  Ginny's adult daughter, Bailey, would occasionally bring Venson to Ginny's residence, sometimes spending the night.  The State alleged in its indictment that Venson engaged in sexual contact

---

[1]In Venson's appellate cause number 06-25-00066-CR, he appealed another conviction for indecency with a child by contact.

[2]*See* U.S. CONST. amend. V.

with Rose by causing her to touch Venson's genitals "with the intent to arouse or gratify [his] sexual desire."

Rose testified to three instances of inappropriate touching by Venson. Rose said the first incident occurred when she was asleep on the couch and awoke to Venson's hand under her blanket. Rose said that Venson rubbed her legs and moved his hand toward her "private area." According to Rose, Venson then rubbed his fingers back and forth on top of her shorts on her "private area" and then on top of her underwear. Rose said that no one else was in the room and that she felt scared and "froze." Rose testified that a second incident occurred while she, Bailey, and Venson were on the couch watching a horror movie. According to Rose, after Bailey fell asleep, Venson began rubbing Rose's legs and placed his finger "in [her] private area." Rose testified that a third incident occurred on Bailey's birthday after Bailey fell asleep while watching a different movie with Rose and Venson. According to Rose, Venson made Rose touch his penis with her hand after Bailey had fallen asleep.

The State introduced a chat message from Rose to Venson in which Rose advised Venson to focus more on Bailey since Bailey was an adult and Rose was "just a [twelve]-year-old little girl, not so important." Ginny testified that she discovered the chat message while checking Rose's cell phone and believed it suggested an inappropriate relationship between Rose and Venson.

Ginny testified that she went to Rose's room to talk about the chat messages with her and that Rose gave her a look that Ginny would "never forget," as if "[Rose] was scared and relieved

---

[3]We use pseudonyms for all family members to protect the identity of "any person who was a minor at the time the offense was committed." TEX. R. APP. P. 9.10(a)(3).

at the same time." According to Ginny, during that conversation, Rose disclosed that Venson had "messed with" her on three occasions on the couch with "his hand[s] down her pants." Ginny emphasized that her conversation with Rose was brief and only lasted about five minutes. Ginny said Rose did not give details about the incidents but that the conversation led Ginny to call the police.

Ginny then sent a message to Venson asking if he wanted to divulge any information about himself and Rose, which prompted Venson to reply that he "like[d] Rose but [he] wouldn't do anything to, like, get in trouble or anything." Ginny said that she took Venson's responses to mean "[t]hat he knows."

Amy Vallery, a deputy with the Cass County Sheriff's Office, testified that on the day of the outcry, she requested that a forensic interview be scheduled at the children's advocacy center for the following Monday. Maureen Fletcher, a forensic interviewer with the Texarkana Children's Advocacy Center, testified that Rose made an outcry of sexual abuse. According to Fletcher, Rose described three separate instances of sexual abuse.

In the first incident, which occurred three or four months before August 2023, Rose told Fletcher that she was "on the couch with a blanket on top of her, and when she woke up, [Venson] was sitting on the side of the couch and he was touching on her thigh." Rose said that Venson's hand then went "up to . . . her girl's private spot . . . under her shorts, on top of her underwear." According to Fletcher, Rose "said that [Venson's] finger was rubbing on her girl's private spot." As for the second incident, Fletcher testified that Rose said Venson "put[] his hand on her thigh again" after Bailey fell asleep while the three of them were watching a scary

4

movie.  According to Fletcher, Rose said that she got up and moved away as Venson "started moving his hand up" her thigh.  Fletcher testified that Rose said the third incident occurred on June 2, 2023, when she woke up with Venson's "finger . . . inside her private spot" and that, after noticing she was awake, Venson "put her hand on his private spot . . . making an up and down motion" while "his hand was on top of her hand."

Venson testified in his own defense and denied sexually touching Rose.  Venson acknowledged a close relationship with Rose but characterized it as appropriate and denied any intent to arouse or gratify sexual desire.

To rebut Venson's testimony, Rose testified that during the second touching, she could not remember "if [Venson] actually did go inside, but [she did] remember he went on top of [her] underwear."  Rose then reiterated that Venson "had put his finger inside of [her]" during the third touching and that "[h]e made [her] touch him."

After hearing that evidence, the jury found Venson guilty of indecency with a child by contact.

## II.    Sufficient Evidence Supports the Jury's Verdict

Venson's third point of error argues that the evidence was legally insufficient because "Rose's lack of credibility, as demonstrated by discrepancies between her statements to a forensic interviewer and her trial testimony, rendered the evidence at trial so weak that no rational trier of fact could have found guilt beyond a reasonable doubt."  We disagree.

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge."  *Williamson v. State*, 589 S.W.3d 292, 298 (Tex.

5

App.—Texarkana 2019, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). In this case, the State alleged in its indictment that Venson, on or about June 3, 2023, "with the intent to arouse or gratify [his] sexual desire," "cause[d] Rose Lane (pseudonym) . . . , a child younger than [seventeen] years of age, to engage in sexual contact by causing [Rose] to touch the genitals of [Venson]."

As a reviewing court, we look to all the evidence in the light most favorable to the State to determine whether any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006); *Saxon v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). In performing our evidentiary sufficiency review, therefore, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the jury. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We must presume that the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (recognizing "the factfinder's duty 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts'" (quoting *Jackson*, 443 U.S. at 319)). Moreover, we afford almost complete deference to a jury's decision when it is "based on an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008).

The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id.* at 707. Even when there are inconsistencies[4] during trial, it is the duty of the jury to decide the issue of credibility. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *see Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.). "[R]econciliation of conflicts in the evidence is [also] within" that duty. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (quoting *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986)); *see Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994) (per curiam).

Here, the jury was free to believe Rose's testimony that Venson made her touch his genitals and that the act occurred to arouse or gratify Venson's sexual desires. Rose's testimony alone was legally sufficient to lead a rational jury to find the essential elements of the offense. *See Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd) ("The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault or indecency with a child."); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.07. Simply put, Rose's testimony, the chat messages Ginny discovered, and Fletcher's testimony of Rose's outcry provided more than sufficient evidence from which a rational jury could find, beyond a reasonable doubt, that Venson committed indecency with a child by contact as alleged by the State's indictment.

---

[4]During trial, Fletcher acknowledged that Rose's initial trial testimony added genital penetration to the second time, which differed from what Rose had told her. Rose testified on rebuttal that she could not remember if penetration occurred during the second time and testified that Venson penetrated her and "[h]e made [her] touch him" during the third time.

Because the evidence was legally sufficient to support the jury's verdict of guilt, we overrule Venson's third point of error.

## III.     Conclusion

We affirm the trial court's judgment.


                                        Jeff Rambin
                                        Justice


Date Submitted:      December 17, 2025
Date Decided:        June 29, 2026

Do Not Publish